Good morning, Your Honors. May it please the Court, Ben Wiesinger for the Petitioner. I'll reserve some time for rebuttal. The government wants yet another exception to the rule of res judicata, attaching when a final order is final. This time, their argument is, well, the judge told us we could, which is ridiculous. First of all, because now we know from the transcript that the immigration judge did no such thing. Second, even if she did do such a thing, that would be an ultra-virus order, unenforceable and unreliable by the DHS. Next, the government argues that the board can use what they call their sua sponte authority to reopen anything they want. But our venerable legal doctrines do not exist, or they do exist in part to make sure that the agencies of the government play by the same rules as the rest of us. The board can't use its sua sponte authority to reopen a final order any more than it can use its sua sponte authority to ignore stare decisis. Well, in the Ninth Circuit, if res judicata were determined to apply, we would have to consider the BIA's alternative holding that it would sua sponte grant the government's motion to reopen. And why was that decision an abuse of discretion here? The DHS never made a motion to reopen, Your Honor. All they did is file a new charge in the lawsuit. No. I said we would have to consider, if we agreed with your res judicata argument, then we would have to consider the alternate argument of the BIA's discretion, the BIA's ability to sua sponte reopen, and we would review that for abuse of discretion. And why would that be an abuse of discretion? Two reasons. First, the BIA reviewed the IJA's decision to grant the government's motion to reopen De Novo. That, in and of itself, was error, because what happened in the first proceeding was essentially a denial of a motion to continue. To begin, I don't really know, and I think part of the confusion was, when counsel for the department said, we'd like to revisit the aggravated felony charge, Your Honor, the judge was kind of confused as to what the DHS was actually asking the court to do. But we can only construe that as a motion to continue, because the counsel for the department would have had to go back to his office, prepare a new charging document, make copies, maybe even provide a statement as to good cause, a showing of cause for the continuance. That is reviewed for an abuse of discretion, which the BIA took as a De Novo review, which was a legal error on the BIA's part. You're almost arguing, you know, to me, you're a little bit turning res judicata on its head, but you're almost arguing that this amounts to, like, a double jeopardy type of thing, that you're saying that when they – when the DHS has these hearings, if they know about some other way that a person's removable, even though it really had nothing to do with the way that they were proceeding, that they have to do it all at one time, or else they are forever barred to try to remove someone. Am I – I mean, that's sort of like what you're saying. It's not only what I'm saying. But you are saying that. It is part of what I'm saying, and absolutely, I would argue to my dying day, Your Honor, that that's the exact kind of claim-splitting and sandbagging that res judicata is supposed to prevent. But, counsel, the regulations are very clear that during the course of proceedings, if the BIA – excuse me, if the government wants to file new charges during the course of proceedings, it can do that. There's a procedure that permits that. You might characterize that as an afterthought, but the regulations provide for it. They can file that 261, I believe it's referred to. That's correct, Your Honor. So the rules provide for the government – give the government an opportunity to file those additional charges. Isn't that correct? I put that in two parts, Judge Leibitz. Okay. Let me, as you – Judge Finner. Yes. As you answer, I'd like you to consider this as well. If in this case, if on February the 5th, instead of filing a new notice to appear and incorporating these new charges in that, if the government had simply filed a 261, which the rules contemplate, what would have been problematic about that? There were already two I-261s filed, first a notice to appear, then a 261 on October 24th, another on December 9th. The government knew what it was doing, and they wanted another chance to do it over again. So that in and of itself, the judge would have been well within their discretion to simply deny that, because it was clear that the government was pursuing some sort of reasoned litigation strategy up to the February 3rd hearing. Now, once the judge entered her order on February 3rd, proceedings were administratively final. This is a point of contention from the government, but the regulations are also equally clear that unless they file an appeal, then that decision would have been final. They have 30 days to decide whether to file an appeal. Aren't the proceedings still open? No, Your Honor. Absolutely not. They didn't file an appeal. They didn't file a motion to reopen. They didn't file a motion to reconsider. No, wait a minute. If they had filed an appeal, don't argue anything until your dying day, because the Supreme Court is likely to come down with something unexpected. That's just a --" but they had 30 days to file a notice of appeal. If they had filed a notice of appeal, it would clearly be open, wouldn't it? It would still – proceedings would maybe still clearly be open. The problem is, it would still – the DHS would still be asking the judge to go back and reconsider its denied charges, or reconsider the DHS's decision to withdraw the aggravated felony. So it's a litigation tactic that the DHS employed. The judge has to assume that that was a reasonable, intelligent decision, and the DHS, in my argument, would be required to show cause for resurrecting the old charge. I don't see good cause for that. Nor did – I mean, the DHS didn't even submit a reason, even a dumb reason, for the aggravated felony. Congress couldn't have made this more complicated than they already did. I mean, in terms of – and that – and both sides often have problems that it turns out, because they originally charge him with an alien being convicted of a crime involving moral turpitude within five years of admission to the United States. But however, it gets complicated, because he entered as a lawful permanent resident in 1993. So it really – they realize in this going on that how he entered and when he entered becomes problematic about it, but he still is removable under other – you know, and I understand why you've got to play gotcha, because otherwise, we gotcha. You know, that's the – but the whole thing is the process allows for these – these type of amendments to be made, as it appears. And they were granted, by my calculation, eight months of process to get it right, and they still didn't do it, Your Honors. My client was detained June of 2008, and the judge entered the order, so I guess more like seven months, February 3, 2009, and he is still detained in Eloy today. So the violation of the due process rights here is unimaginable. We've detained this man, this young man, for the – for the best years of his life on a legal issue and a legal problem the government created. I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Okay. Good morning. Good morning. Excuse me. Good morning. Maybe you want to respond to that you're locking people up and ruining their lives. Well, I'm sure I'll get to it, Your Honor. If you'd like me to talk about it now, I'm happy to. But let me open – may it please the Court, my name is Jeffrey Bernstein, and I do represent the Attorney General of the United States. I don't really want to leave the lectern without making clear that the government would not have had to have refiled charges had the alien not appeared at a proceeding relatively late on in the proceedings and came up with new evidence, which apparently the DHS was unaware of, that he had been admitted as a lawful permanent resident, I think, five years earlier when he originally conceded that he had entered the United States as a lawful permanent resident in 2006. It was only at that point that the government, having had lost their opportunity to prove their notice to appear, based on new facts which deprived them that opportunity, did they seek to revisit the aggravated felony charge. Counsel, may I ask you if the attorney for the government had not construed what the I.J. said in a certain way? Your argument seems to be that the attorney thought the I.J. was saying you really need to start over again with a separate proceeding. If the government's attorney had not understood what the I.J. was saying in that way, I know this is asking you to sort of reconstruct, but would it not have been the more predictable response by the government, given what happened on February 3rd, to file, if you were aware of these new forgery convictions, to file a 261 in order to get those additional charges into the process? Wouldn't that have been the sort of normal response, given what happened on February 3rd? Well, in point of fact, given what happened on February 3rd, the I.N.S., the Immigration Service attorney, was backed into a corner. The charges dropped away with this new evidence presented by the Petitioner. He asked the immigration judge if the immigration judge would permit the service to revisit the aggravated felony charge. The immigration judge, as the transcript that was provided, establishes clearly was having none of that. I'm not going to – I don't know why you all dropped the first – the aggravated felony charge the first time, but you can't prove up the charge that you brought. I'm going to terminate proceedings, and the only thing that I'm going to ask you is whether or not you want to reserve appeal. And that's – that is certainly not exactly word-for-word what was said, but that's really what happened. And that's the sense that the immigration attorney – that the service attorney had on that day. So the immigration – But then two days later, the government comes back, not simply with the resurrected charge, but two additional convictions, correct? Yes. Yes. And I actually initially wanted to point out that there, as Your Honor pointed out, Judge Callahan, that there is nothing that precludes the service from charging the – an alien at any time with any charge. Obviously, as prosecutors do, the service takes care in choosing what to charge a particular alien with, given the workload of the attorneys, given the sometimes inability to find conviction documents, et cetera, et cetera, et cetera. Shouldn't you have known, though – you know, and I'll take this up for the appellant – you know, since you are the all-knowing government, shouldn't you have known that the alien came in as an LPR at the time? No. There – we shouldn't have known. There are hundreds of thousands of aliens in the country, if not millions. There are hundreds of thousands of aliens in proceedings. I do not think the service has enough personnel, which they did, but I don't think they have enough personnel to track the incoming – the comings and goings of every alien in the country. The – particularly in point of – in view of the fact that the alien admitted at an early master calendar hearing, I think a number – maybe a year or so before the February 3rd hearing, that he had arrived on the earlier date. So no, in answer to your question – and I apologize if I haven't answered it – no, the government should not have known. Let me just go back a step and talk about res judicata. The Supreme Court and this Court have held that res judicata in an administrative proceeding is not applicable where there is a non-final order and or where one of the – where the party who is charged is not permitted the opportunity to fully litigate their position. Clearly – and I don't know if I have to go through it, but I will – neither circumstance is present. As the Court has observed, on February 5th, when the DHS attempted to bring additional charges, the immigration judge's order was not yet final. The regulation provides very specifically when a decision of the immigration judge becomes final. And I believe the regulation is 1003 – well, no. Well, if we were to agree with appellant's counsel, does that mean that at the time that you initiate proceedings against an alien for removal, that you would then be required to allege all ways that the person is removable, not only that you know or that you should know? Yeah, I'm not – And then otherwise, it seems to me it's almost like a jeopardy argument. I'm not sure that even the petitioner goes that far. But yes, you're absolutely correct. If that position were to be adopted by this Court, then I think you'd throw DHS into a flummox that they'd have to bring. You don't read Bravo-Pedroza as being that broad? No, no. Absolutely not. Bravo-Pedroza specifically provides, among other things, obviously, that an IJ order has to be final before race judicata preclusion attaches. And this regulation, again, provides that an IJ decision is final only upon the earlier of two events. Either the party does not waives appeal, which didn't happen in this case, or at the expiration of the time for appeal. Now, the petitioner argues for a relation-back doctrine, but that relation-back doctrine cannot stand in the face of the specific regulatory provision providing exactly when an administrative decision of an immigration judge becomes final. Counsel, I don't know that you really actually answered the question that I asked you earlier. You just said that there's no final order until the expiration of that 30-day appeal period. Is that your position? That is what the regulation states. Okay. And so that suggests that the proceedings are still open, and then you have a regulation that permits the government to file new charges while the proceedings are still open pursuant to this 261 document that we keep referring to. Again, the government did not do that here. It appears that, again, taking its cue from the IJ, I thought we need to start all over again with a new proceeding. Isn't that the significance of filing that notice-to-appear document? Doesn't that really, it's like starting over again with a new proceeding, which then lends itself to the res judicata argument. Well, look, this other proceeding is over. You didn't raise all of the charges that you could have during those proceedings. You're starting all over again with a parallel proceeding, and that lends itself to a res judicata argument. Why did the government do that? When this other easy alternative seemed to be available. There weren't easy alternative remedies, Your Honor. As I attempted to explain, and I obviously didn't explain it well enough, and I apologize for that, is that the immigration judge told the service that it was not going to consider, and I believe the board found, and I think it's true, that the service reasonably interpreted that instruction of the immigration judge that I'm not going to let you file the I-261. If you want to bring new charges, that's fine and dandy. Where did the judge say, where did the I.J. say that? He said that the I.J. did not, had an issue with resurrecting the one charge that had been dropped. The I.J. didn't even know about these new charges. The government never brought those charges to the I.J.'s attention. The immigration judge was aware because the service had originally, and he was, and she was aware of what the service was talking about because she was the immigration judge when the service originally brought charges based upon aggravated felony and then withdrew them and brought the charge, the CIMT charge. Your Honor, and I'm searching for, unfortunately, I'm running out of time, but I'm searching for the... So essentially, the record would show it was the same immigration judge at the, in the proceedings throughout, and when the government chose to proceed on one, go one route as opposed to the aggravated felony route, that judge withdrew the charge. And the record would reflect that? Yes. And page 314 of the administrative record, Your Honor, is the pivotal page of the February 3, 2009 proceeding. The service at the top of that page, actually line 3, says, I would ask for an opportunity in light of the changed factual allegation and the non-applicability of the previously lodged charge of removability to revisit the aggravated felony charge of removability if possible. And later on on that page, at line 14, they were talking about why the government withdrew the charge, and the immigration judge says, I don't know why they withdrew it, and I'm not going to suppose as to what the reason was for the withdrawal, but nevertheless, as there doesn't appear to be a corresponding charge with this because this is after the five-year period, we don't have any other charge. I'm not going to allow you time to go to revisit the aggravated felony charge. Your office can take a look at that if they want to bring new charges. That's separate and distinct. So, again, the, and that really goes to the second argument, because the Supreme Court and this Court have held that the government must have an opportunity to litigate issues. The immigration judge, as the Board properly concluded, and there's no evidence compelling a contrary conclusion, precluded the government from litigating their case because, and finding race judicata when they filed new charges, as she seemed to suggest they do, because, excuse me, because she, again, precluded them from bringing the new charge. They had an absolute right under the regulations, 1003.30, to bring new charges. They attempted to do so before the immigration judge. It's unclear whether or not they were asking for a continuance or not. I, I, I. Well, I think you've cited us to the part of the record. Your time has, is gone into overtime. But if my colleagues continue to have questions, please, otherwise, otherwise you're done. I understand that. I would just ask the Court to deny the petition for review and affirm the Board's  Thank you. First, I'd like to point the Court's attention to AR 452-454, the I-213, which is a record of inadmissible deportable alien that was prepared June 11, 2008. Subject was issued lawful permanent residence July 9, 1993. This is not new evidence. The government knew all along when the respondent was admitted, excuse me, when the petitioner was admitted as a lawful permanent resident. The hearing on, on February 3, 2009 when he switched, changed his pleadings was merely to reflect the facts of the case. Well, but why would you admit something if it weren't true? I don't know that, Your Honor. Perhaps he came back as a returning resident from a trip to Tijuana. Well, but he did admit it the first time, right? That's correct, Your Honor. Okay. But the government had the same evidence all along. They knew about the date of admission. They knew about each one of the convictions as of June of 2008. The argument that the judge denied them an opportunity to litigate an issue is absolutely ridiculous. They had seven months to litigate. They issued three separate charging documents and a brief in which they withdrew the aggravated felony charge. Personally, I know exactly why they did that, but that's not part of the record.  Yes, Your Honor. In front of Judge Linda Spencer Walters. Other than that, go ahead. So was when counsel for the government said what counsel for the government read previously, it was the same immigration judge when they chose not to proceed with the aggravated felony and take the other route? That's correct, Your Honor. I'm open to any further questions other than that. I don't think so. Thank you both for your argument. Not unless my colleagues. We can't go rebuttal to rebuttal or whatever. So unless my colleagues. Well, do my colleagues want to hear?  Thank you. Thank you, Your Honor. I guess I do have what was it your misstatement or his misstatement. All right. Well then I don't want to then you can correct it otherwise but if it was your misstatement I want to hear it. Okay. Thank you. Right.
judges: Schroeder, Lipez, Callahan